# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

PEACEHEALTH,

Respondent,

v.

SY DOUANGMANY,

Appellant.

DIVISION ONE

No. 80897-4-I

UNPUBLISHED OPINION

DWYER, J. — While in the employ of PeaceHealth St. Joseph Medical Center, the back of Sy Douangmany's head was hit by a coworker, reportedly causing him anxiety and depression. Douangmany filed a claim for industrial insurance benefits, which was denied. Douangmany appealed this decision to the Board of Industrial Insurance Appeals, which determined that Douangmany had suffered an industrial injury and was, thus, entitled to benefits. PeaceHealth appealed to the superior court, which reversed the Board's decision after a jury determined that Douangmany had not suffered an industrial injury. Douangmany appeals from the superior court decision, asserting that insufficient evidence supported the jury's verdict. We affirm.

I

Sy Douangmany is a pharmacy technician at PeaceHealth St. Joseph Medical Center (PeaceHealth). In November 2016, he worked in the oncology pharmacy department where he was training to mix chemotherapy medications.

Randy Ball is also a pharmacy technician at PeaceHealth. Ball specializes in mixing chemotherapy drugs. By November 2016, Ball and Douangmany had known each other for over a decade, working on and off in the same department. They had a friendly relationship. They regularly high-fived, fist bumped, and joked with each other. Douangmany had, on at least one occasion, invited Ball to his home for a barbeque. He also had occasionally brought food to share with Ball during lunch.

On November 10, Douangmany was mixing chemotherapy drugs and was unable to get a drug out of a vial because he was using an incorrect vial adapter. He asked Ball for assistance. Ball commented that he had already told Douangmany what adapter to use, hit him lightly on the back of the head, and assisted Douangmany with the correct adapter. A coworker who witnessed the event described the contact as a "tap . . . on the back of the head in a joking manner." Later that same day, Douangmany gave Ball food he had prepared for Ball's lunch.

Douangmany testified that the incident made him feel afraid and embarrassed, and that the contact was particularly offensive to him as a practicing Buddhist. That evening, Douangmany contacted his supervisor and reported the incident to her. Douangmany was unable to sleep and went to the emergency room in the early hours of the following morning. Later that same day, November 11, Douangmany saw his primary physician, Dr. Steven Bloom. Dr. Bloom diagnosed Douangmany with anxiety. Several days later, on

November 14, Douangmany returned to Dr. Bloom and complained of headaches, dizziness, and neck pains, which became worse when Douangmany was "feeling a negative mood." Dr. Bloom instructed Douangmany to take time off work between November 11, 2016 and February 25, 2017. Dr. Bloom testified that stressors other than the incident at work—such as his wife's chronic illness and his son's absence to play competitive hockey—were likely the cause of Douangmany's symptoms.

Dr. John Wendt, a neurologist, evaluated Douangmany on January 19, 2017. A neurological exam yielded normal results. Dr. Aaron Hunt, a forensic psychiatrist, diagnosed Douangmany with an adjustment disorder, mixed anxiety and depressed mood—meaning a "disproportionate emotional or other response to a specific stressor that's excessive." Dr. Hunt concluded that Douangmany's mental health condition was not caused by a specific traumatic event but, rather, was the result of the general stress of his workplace environment.

Douangmany filed an "Application for Benefits" with the Department of Labor and Industries on November 22, 2016. The claim was denied on March 24, 2017. The Department of Labor and Industries also issued an overpayment order directing Douangmany to reimburse PeaceHealth for provisional benefits he had already received.

Douangmany was subsequently evaluated by two psychiatrists. Dr. Mendel Gordin saw Douangmany on July 31, 2017. Dr. Gordin diagnosed Douangmany with an adjustment disorder with mixed anxiety and depressed

mood and concluded that it was likely related to the incident with Ball at work. Dr. Christopher Noell evaluated Douangmany on September 12, 2017 and also diagnosed him with an adjustment disorder with mixed anxiety and depression as well as major depressive disorder with a single episode of anxious distress.

Douangmany appealed the orders denying his claim and requiring repayment. An industrial appeals judge found that Douangmany had sustained an industrial injury and reversed the Department's orders. PeaceHealth filed a petition for review with the board, which was denied. PeaceHealth then appealed to the Whatcom County Superior Court. After trial, a jury returned a verdict finding that Douangmany had not sustained an industrial injury. The court entered an order denying Douangmany's claim and reinstating the overpayment order.

Douangmany appeals.

II

Douangmany contends that insufficient evidence supported the jury's verdict that he did not suffer an industrial injury.

Washington's Industrial Insurance Act, Title 51 RCW, "includes judicial review provisions that are specific to workers' compensation determinations." Rogers v. Dep't of Labor & Indus., 151 Wn. App. 174, 179, 210 P.3d 355 (2009). According to those provisions, the superior court conducts a de novo review of the Board's decision, relying exclusively on the record before the Board. RCW 51.52.115; Rogers, 151 Wn. App. at 179. On appeal to the superior court, the Board's decision is prima facie correct, and the party

challenging the Board's decision must support its challenge by a preponderance of the evidence. RCW 51.52.115; <u>Ruse v. Dep't of Labor & Indus</u>., 138 Wn.2d 1, 5, 977 P.2d 570 (1999).

We review the superior court's decision according to the ordinary standard of review for civil cases, determining whether substantial evidence supports the jury's verdict. RCW 51.52.140; <u>City of Bellevue v. Raum</u>, 171 Wn. App 124, 139-40, 286 P.3d 695 (2012). "'[E]ven if the [appellate] court were convinced that a wrong verdict had been rendered, it should not substitute its judgment for that of the jury so long as there was evidence which, if believed, would support the verdict rendered.'" <u>Raum</u>, 171 Wn. App at 151 (alterations in original) (quoting <u>Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc</u>., 96 Wn.2d 939, 943, 640 P.2d 1051 (1982)). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the matter asserted. <u>Ferenćak v. Dep't of Labor & Indus.</u>, 142 Wn. App. 713, 719-20, 175 P.3d 1109 (2008), <u>aff'd on other grounds by</u> <u>Kustura v. Dep't of Labor & Industries</u>, 169 Wn.2d 81, 233 P3d 853 (2010). In carrying out this review, we view the record in the light most favorable to the party who prevailed in superior court. <u>Harrison Mem'l Hosp. v. Gagnon</u>, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002). Thus, we view the evidence in the light most favorable to PeaceHealth.

RCW 51.08.100 defines an industrial injury:

"Injury" means a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom.

5

A mental condition caused by stress qualifies as an industrial injury when the condition results from a sudden, tangible and traumatic event that produces an immediate result. Rothwell v. Nine Mile Falls Sch. Dist, 149 Wn. App 771, 780, 206 P.3d 347 (2009); see WAC 296-14-300(2)(b) ("Examples of single traumatic events include: Actual or threatened death, actual or threatened physical assault, actual or threatened sexual assault, and life-threatening traumatic injury.")

Here, there was evidence presented that Douangmany's symptoms were caused largely by other stressors in his life. In November 2016, Douangmany and his wife were actively attempting to settle a motor vehicle accident claim, Douangmany's wife was suffering from posttraumatic stress disorder and had been hospitalized for mental health reasons, and Douangmany's teenage son was living away from home in order to play competitive hockey. Douangmany's primary care doctor testified that these events were very stressful for him and were likely the cause of his symptoms. Although Douangmany presented testimony from psychiatrists who believed the incident in question was a cause of his symptoms, the jury was not obligated to agree with their conclusions. A rational and fair-minded juror could conclude that Douangmany's regular care provider, Dr. Bloom, who treated him during the time period in question, was better positioned to make such a determination than was a psychiatrist who evaluated Douangmany only once, many months after the fact.

There was also testimony that, on the occasion in question, Ball's physical contact with Douangmany was light and playful, and that Douangmany was not a

person so sensitive to physical contact that he could not participate in contact sports such as hockey. Furthermore, there was testimony presented that Douangmany continued to be friendly with Ball immediately after the incident, including sharing his lunch with Ball that day. A rational and fair minded juror could conclude that this evidence was credible and inconsistent with the type of traumatic event that would cause a mental condition that qualifies as an industrial injury.

Thus, rational and fair-minded jurors could conclude that Douangmany's condition did not fall within the meaning of industrial injury as defined by RCW 51.08.100. Accordingly, sufficient evidence supports both the jury's verdict and the superior court's orders.

Affirmed.

_____
Dwyer, J.

WE CONCUR:

_____  _____
Bowman, J.                  Smith, J.

7