

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| TIMOTHY D. MANION, | ) | |
| | ) | No. 39972-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCHWAN'S HOME SERVICE, INC. | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, A.C.J. — Timothy Manion appealed the Department of Labor and Industries' (L&I) decision to close his worker's compensation claim to the Board of Industrial Insurance Appeals (BIIA). The BIIA affirmed L&I's decision and Manion appealed to the superior court. A jury found that the BIIA was incorrect in its decision and the trial court reversed the BIIA order. The employer, Schwan's Home Service, Inc. (Schwan's), appeals the jury verdict, asserting that substantial evidence does not support the jury verdict to overturn the BIIA's decision. We affirm and award Manion his reasonable attorney fees.

BACKGROUND

*Procedural History*

Timothy Manion opened a worker's compensation claim after suffering a work-related injury while employed by self-insured Schwan's. Following medical intervention

and vocational retraining to be a general office clerk, L&I closed Manion's claim based on the recommendation of Julie Busch, a vocational rehabilitation counselor assigned to Manion's case.

Manion appealed the L&I order to the BIIA and hired his own vocational rehabilitation counselor. The BIIA heard testimony from three witnesses and considered the deposition testimony of each party's expert witness. Schwan's called Busch to testify and Manion called Maurilio Garza. Ultimately the BIIA judge credited Busch's opinion that Manion was employable, and affirmed L&I's order. Manion petitioned the BIIA to review its proposed decision and order, but the BIIA denied the petition for review. Manion filed a notice of appeal to superior court in Benton County and the matter was tried before a jury on the record.

*The Jury Trial and Facts of the Case*

After opening statements, the parties read the transcript to the jurors.

First, the jury heard testimony from Manion that he was 57 years old and a high school graduate from Kennewick. His early work experience included primarily manual labor and he began working for Schwan's in 1994. After 16 months, Schwan's promoted Manion to warehouse manager and Manion remained in that role for 20 years. As a warehouse manager, Manion supervised an average of four people and used a computer in a limited capacity.

After the work injury in 2012, Manion underwent back surgery in 2015 and subsequent physical therapy. Unable to return to his previous work at Schwan's, Manion agreed to a two-year vocational retraining program. Manion took math and computer science classes to learn Microsoft programs such as Word, Excel, PowerPoint, and Outlook, but did poorly or was not able to pass them. Despite his best efforts, Manion was also unable to pass a college-level English course.

As part of his vocational retraining efforts, Manion participated in an internship at West Coast Auto Dealers in the Tri-Cities for about eight hours per week for around six months. Manion's duties included inputting a list of vehicle identification numbers and printing a report for each. The internship at West Coast Auto Dealers concluded, and Manion was not offered permanent employment. Absent an offer from West Coast Auto Dealers, Manion applied to about 200 jobs between June 2017 and January 2019, which resulted in two interviews and no job offers.

Next, the jury heard testimony from Ryan Henning and Robert Henning, two employees of West Coast Auto Dealers. Ryan said that Manion was a really nice guy, but he did not spend much time training Manion or giving him tasks because Manion was a temporary employee. Manion only had basic tasks and did not use Microsoft programs or email customers.

Robert had previously submitted a letter stating that Manion was completing tasks such as data entry, uploading pictures, and using photoshop to edit the pictures and add

3

banners.  However, Robert admitted that Manion was not performing these tasks and Robert had "talked [him] up" in that letter.  Clerk's Papers (CP) at 150-52.

Next, the jury was read the deposition transcript of Maurilio Garza, Manion's expert witness and vocational rehabilitation counselor.  Manion was referred to Garza in 2017 to assess whether he was employable.  Manion's vocational rehabilitation plan was aimed at making him employable as a general office clerk, which requires good written and oral communication skills, proficiency in Microsoft programs, and clerical skills.  The plan was appropriate for the goal, but Manion did not complete the plan successfully.

In addition to considering Manion's grades, Garza provided additional tests to evaluate Manion's aptitudes and proficiencies, and the results showed significant deficiencies.

Garza also explained that an important criterion of employability is assessing the labor market.  Garza performed a labor market study that confirmed employers of office clerks in the Tri-Cities expected good customer service, proficiency in Microsoft products, good English oral and written communication skills, two years of recent clerical experience, and preferred candidates that speak Spanish or are bilingual.  Manion did not have previous clerical experience and it would be difficult for Manion to substitute his recent education for the requisite experience because he did not do well in school.

After meeting with Manion about 14 times, Garza opined that Manion had adequate communication skills, marketable customer-service skills, a marketable ability

4

to operate office equipment, but was not bilingual. Regarding the periods of July 6, 2017, through March 5, 2018, and March 6, 2018 onward, Garza concluded that Manion was not able to obtain or maintain reasonably continuous gainful employment in the position of a general office clerk in the Tri-Cities labor market and was not employable from a general standpoint.

Finally, the jury heard the deposition of Julie Busch, Schwan's expert witness and vocational rehabilitation counselor. Manion was referred to Busch by the claims examiner to conduct a vocational assessment. After Schwan's was unable to accommodate Manion's return to work, Busch worked with Manion to determine whether he had transferable skills and to decide on a vocational rehabilitation plan. The goal was to ready Manion to be a general office clerk and he would undergo two years of retraining. This plan was supported by Busch's opinion that the Tri-Cities was a positive labor market.

Busch confirmed Manion's poor performance in school, which caused a revision to the retraining plan and was the reason he did not successfully complete the retraining program as originally written.

Busch facilitated the supervised employment with West Coast Auto Dealers who indicated to her at the time that they intended to offer Manion full-time employment. Busch closed Manion's file, understanding that he was being offered a job with West

Coast Auto Dealers and the situation had concluded in a positive way. Based on Busch's report and recommendations, L&I agreed that Manion was employable.

Busch opined that the errors on Manion's resume reflected poorly on his clerical abilities and may be a reason for an employer to decline extending an interview. However, Busch also testified that she is responsible for assisting a worker with a resume, but she did not do that for Manion.

Finally, after testing and evaluation, Busch testified that Manion was average for general learning, numerical and spacial skills, and below average for verbal, form perception, and clerical skills. Additionally, Busch opined that the labor market in the Tri Cities for entry-level clerical work was robust and would continue to be. Ultimately, Busch concluded that Manion was capable of obtaining and maintaining reasonably continuous gainful employment from July 6, 2017 to March 5, 2018, and March 6, 2018 onward.

*Jury Instructions*

The jury was provided the BIIA's findings and decision with additional instructions that those findings and decision are presumed correct. Jury Instruction No. 9 addressed the law of the case and the parties' stipulations regarding the medical evidence:

> Total disability is an impairment of mind or body that renders a worker unable to perform or obtain a gainful occupation with a reasonable degree of success and continuity. It is the loss of all reasonable wage-earning capacity.

6

A worker is totally disabled if he is unable to perform or obtain regular gainful employment as a result of an industrial injury. A determination of total disability should be made by giving consideration to the individual worker's weaknesses and strengths, age, education, training and experience, any permanent loss of function which pre-existed the industrial injury, and any permanent loss of function that was proximately caused by the industrial injury.

A worker is not totally disabled solely because of inability to return to the worker's former occupation. However, total disability does not mean that the worker must have become physically or mentally helpless.

Total disability is permanent when it is reasonably probable to continue for the foreseeable future.

In this case the parties have stipulated that the medical evidence supports that on a more-probable-than-not basis, Mr. Manion was unable to return to work at his job of injury, that of a Senor [sic] Material Handler/Supervisor, due to his permanent physical restrictions related to his industrial injury between July 6, 2017 and March 5, 2018 and from March 6, 2018 onward.

The parties have also stipulated, or agreed, the medical evidence supports that on a more-probable-than-not basis, that Mr. Manion's permanent physical restrictions related to the industrial injury would not preclude Mr. Manion from performing the physical activities required for the job of General Office Clerk as it is generally performed in the Tri-Cities, Washington labor market between July 6, 2017 and March 5, 2018 and from March 6, 2018 onward.

CP at 405-06. Jury Instruction No. 11 added:

Temporary total disability (time loss compensation) and permanent total disability (pension) differ only in duration, and not in its character. Temporary total disability would be a condition temporarily incapacitating the worker from performing any work at any gainful occupation.

CP at 408.

7

No. 39972-9-III
*Manion v. Schwan's Home Service, Inc.*

*Judgment on Verdict*

The jury was asked: "Was the Board of Industrial Insurance Appeals correct in deciding that Timothy Manion was not a temporarily totally disabled worker within the meaning of RCW 51.32.090 from July 6, 2017, through March 5, 2018?" CP at 412. The jury indicated no. CP at 412.

The jury was asked: "Was the Board of Industrial Insurance Appeals correct in deciding that Timothy Manion was not a permanently totally disabled worker within the meaning of RCW 51.08.160, as of March 6, 2018?" CP at 413. The jury indicated no. CP at 413.

Accordingly, the trial court reversed the BIIA's decision and order and awarded Manion attorney fees and costs.

Schwan's Home Service, Inc. appeals.[1]

## ANALYSIS

1. SUBSTANTIAL EVIDENCE

Schwan's contends that a reasonable jury could not have disagreed with the BIIA's ruling. It reasons that the evidence supports the BIIA's determination and

---

[1] The notice of appeal is not included in the record. L&I was a defendant in the case but does not join Schwan's in its appeal.

substantial evidence does not support the jury verdict. We conclude that the jury verdict is supported by substantial evidence and affirm.

Judicial review of a BIIA decision "is limited to examination of the record to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings." *Young v. Dep't of Lab. and Indus.*, 81 Wn. App. 123, 128, 913 P.2d 402 (1996); *see* RCW 51.52.140. The BIIA decision is considered prima facie correct and the "party attacking the decision must support its challenge by a preponderance of the evidence." *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999); *see also* RCW 51.52.115. Upon demand of either party, a jury may be empaneled to review a BIIA decision and resolve factual disputes. RCW 51.52.115. As a trier of fact, the jury may disregard the BIIA's decision if it believes that other substantial evidence is more persuasive, even if substantial evidence supports the BIIA's findings. *Lewis v. Simpson Timber Co.*, 145 Wn. App. 302, 315-16, 189 P.3d 178 (2008).

Here, there was sufficient evidence to support the jury's finding that the BIIA was incorrect in deciding that Manion was not a temporarily totally disabled worker from July 6, 2017 through March 5, 2018, and not a permanently totally disabled worker as of March 6, 2018, as discussed below.

Jury instructions become the law of the case unless the instructions are properly objected to. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). Schwan's does

not assign error to the jury instructions; thus, the instructions are the law of the case. As such, the remaining question is whether sufficient evidence supports the jury verdict.

Because the parties stipulated to the medical evidence and Manion's physical abilities, the jury was left to consider "the individual worker's weaknesses and strengths, age, education, training and experience." CP at 405. Here, viewing the facts and drawing inferences in a light most favorable to Manion, there was sufficient evidence for the jury to find that the BIIA's decision was incorrect.

Manion was 57 years old and only had a high school education. He worked as a warehouse manager for Schwan's for 20 years, where his use of computers was extremely limited. Despite Manion's best efforts, he performed poorly in the math, English, and computer classes that were part of the retraining plan. Both experts confirmed Manion's poor performance in the classes, below average performance on specialized aptitude tests, and inability to complete the original plan successfully.

The jury heard competing testimony from the vocational rehabilitation counselors. Garza met with Manion about 14 times, whereas Busch only confirmed meeting with Manion once. Additionally, Busch closed Manion's file, understanding that he was being offered a job with West Coast Auto Dealers and the situation had concluded in a positive way. Based on Busch's report and recommendations, L&I agreed that Manion was employable. However, Manion was not offered permanent employment by West Coast Auto Dealers.

Further, Busch received a letter from West Coast Auto Dealers stating that Manion was completing tasks such as data entry, uploading pictures, and using photoshop to edit the pictures and add banners. However, Robert Henning admitted that Manion was not performing these tasks and Robert had "talked him up" in that letter. CP at 150-52. Given the material discrepancies surrounding Manion's employment with West Coast Auto Dealers, a reasonable jury could infer that Busch's recommendation to L&I was based on incomplete or erroneous information. This inference alone is likely sufficient for the jury to overcome the presumption that the BIIA's findings were correct.

Absent an offer from West Coast Auto Dealers, Manion applied to about 200 jobs over 18 months, which resulted in two interviews and no job offers. Busch opined that the errors on Manion's resume reflected poorly on his clerical abilities and may be a reason for an employer to decline extending an interview. However, Busch also testified that she is responsible for assisting a worker with a resume, but she did not do that for Manion.

Ultimately the parties' dueling experts made competing conclusions regarding the labor market and Manion's employability and there is enough evidence to support that a reasonable jury could find Garza the more credible expert witness, and accordingly conclude that Manion was not employable for the periods in question.

Schwan's argues that a reasonable jury could not find Manion unemployable because he was given more training than he needed to become a general office clerk.

11

However, given Manion's poor performance in classes and on aptitude tests, a reasonable jury could find that despite significant training, Manion nonetheless remained unemployable.

Next, Schwan's argues that a reasonable jury could not have found Garza more credible than Busch because Busch was far more familiar with Manion, Garza was hired solely to discredit Busch, and the BIIA judge ultimately credited Busch's opinion. However, as discussed, the evidence supports that a reasonable jury could have found Garza more credible or persuasive than Busch and this court will not re-weigh evidence or determine the credibility of witnesses on appeal. *See Robinson v. Dep't of Lab. and Indus.*, 181 Wn. App. 415, 425, 326 P.3d 744 (2014).

Finally, Schwan's argues that substantial evidence does not support the jury verdict because it supports the opposite finding—BIIA's initial decision. This argument fails because reasonable minds can differ and substantial evidence supports the jury verdict as discussed herein. *See Lewis*, 145 Wn. App. at 315-16.

2. ATTORNEY FEES

Schwan's requests that if this court overturns the trial court's decision on appeal, the fees and costs imputed to Schwan's by the trial court should be reversed. Because this court is not reversing the lower court's decision, Schwan's is not relieved from those fees and costs.

12

No. 39972-9-III
*Manion v. Schwan's Home Service, Inc.*

Manion requests that if this court affirms the trial court on appeal, Manion should be awarded reasonable attorney fees incurred while defending this appeal pursuant to RAP 18.1 and RCW 51.52.130.

RCW 51.52.130(1) provides that if "a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained, a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court." *See also* RAP 18.1 (requiring a party to request fees in its brief). Here, Schwan's is the appealing party and Manion prevails. Thus, Manion should be awarded his reasonable attorney fees.

We affirm and award Manion attorney fees on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

WE CONCUR:

_____
Fearing, J.

_____
Cooney, J.

13